[Civ. No. 1398. Third Appellate District.—June 29, 1915.]

## MARY C. COLE, Petitioner, v. THE SUPERIOR COURT OF SAN JOAQUIN COUNTY and the Hon. C. W. NORTON, Judge Thereof, Respondents.

GUARDIANSHIP—CUSTODY OF MINOR—POWER OF COURT—SECTIONS 214, CIVIL CODE, AND 1747, CODE CIVIL PROCEDURE.—The superior court, upon denying an application made pursuant to the provisions of section 1747 of the Code of Civil Procedure by a father for letters of guardianship of the person and estate of his minor child, has authority nevertheless to make an order as to its custody by virtue of the provisions of section 214 of the Civil Code.

ID.—CONSTRUCTION OF CODE—COURT OF "COMPETENT JURISDICTION."—In such a proceeding the superior court is a court of "competent jurisdiction" to make such an order, within the meaning of section 214 of the Civil Code.

ID.—"APPLICATION"—WHAT CONSTITUTES.—In such a proceeding, the petition for letters of guardianship and the answer filed thereto by the opposing parent praying for the denial of the application of the petitioner and the award of the custody of the minor to herself, constitute an "application" as that term is used in section 214 of the Civil Code.

ID.—BRINGING OF ACTION FOR CUSTODY UNNECESSARY.—Section 214 of the Civil Code does not require that either party "bring an action" for the custody of the minor, as required by section 199 of such code, and a formal application setting forth the appropriate facts may be regarded as a sufficient basis for a judicial investigation of the situation of the minor and the disposition of its custody in accordance with its welfare.

ID.—JURISDICTION—RESIDENCE OF APPLICANT—NONRESIDENCE OF MINOR. The superior court of the county in which the application is made is

28 Cal, App.—1                    (1)

not without jurisdiction to make an order as to the custody of the minor because of the residence of the minor with its mother in another county, where the applicant is the father of the minor and a resident of the county in which the application is made.

ID.—SEPARATION OF PARENTS—RESIDENCE OF MINOR CHILDREN.—Where a husband and wife are living in a state of separation, the county of the husband's residence is the county of the residence of the minor children, unless he has consented to their acquiring residence elsewhere, or has voluntarily relinquished his parental authority over them or has otherwise been legally deprived thereof.

ID.—CONTEMPT—ORDER FOR CHILDREN TO VISIT FATHER—DISOBEDIENCE OF.—The refusal of a wife to whom the custody of her minor child has been awarded to comply with the provision of the order giving the father the right to have the child visit him during school vacations is contempt of court, and such refusal is not justified by the failure of the father to send the child's railroad fare, where he has directed that it be taken out of the "support money" furnished by him.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Third Appellate District to annul an order of the Superior Court of San Joaquin County adjudging petitioner guilty of contempt and imposing fine.

The facts are stated in the opinion of the court.

Langan & Mendenhall, for Petitioner.

C. W. Miller, for Respondents.

BURNETT, J.—The application is for the annulment of an order of said court finding petitioner guilty of contempt and imposing upon her a fine of fifty dollars. The initial proceeding was brought in said court by Charles P. Cole, husband of petitioner, seeking his appointment as the guardian of the person and estate of Dorothy Cole, the minor child of said Charles P. and Mary C. Cole.

The petition for said appointment was filed, citation was issued and served upon said Mary C. Cole, who appeared and answered, and the application came on regularly for hearing. After receiving the evidence but before rendering a decision the court directed an amended petition to be filed. This was accordingly filed on March 4, 1915, and four days thereafter the answer of said Mary C. Cole and also the order of the court in said guardianship matter were filed.

There is and can be no question as to the legal sufficiency of said amended petition. Some of its averments were traversed by the answer and the court in its order decreed "that the petition of the said Charles P. Cole to be appointed the guardian of the person and estate of the said Dorothy Cole, a minor, be and it is hereby denied; and it further appearing from the petition of the said Charles P. Cole, that said petitioner and said Mary C. Cole, are husband and wife, and are now living in a state of separation, but that said separation is without the consent and against the wish and will of said Charles P. Cole, and that said petitioner and said Mary C. Cole are not divorced, and that no action for divorce is pending between them; that said Dorothy Cole is of the age of ten years, and is the legitimate minor child of the petitioner and said Mary C. Cole; and it appearing to the court that said Mary C. Cole did, on or about the .... day of June, 1914, remove from the county of San Joaquin, and from the home of petitioner in said county, and remove to the city of Oakland, county of Alameda; that said Mary C. Cole at the time she left the home of petitioner herein took with her the said minor child Dorothy Cole, and ever since has had, and now has the said minor child in her custody, and has taken up her abode in said city of Oakland;

"That said Mary C. Cole has not since some time in the fall of 1914 permitted petitioner herein to visit said minor child at her place of residence in the city of Oakland, and has not permitted said petitioner since on or about the 24th day of December, 1914, to visit or see said minor child at all;

"And it appearing that both the said petitioner and said Mary C. Cole are fit and proper persons to have the care and custody of the said minor child, and that neither has any rights superior to the other in regard to the care, custody, education and control of the said child of the marriage while such husband and wife live separate and apart from each other;

"That said Dorothy Cole is not only a female child, but is a child of tender years; that she is an intelligent child, and a child of sufficient age to form an intelligent preference, and that she prefers to remain in the custody of her mother;

"And it appearing to the court that it would be for the best interests of the child in respect to her temporal, mental and moral welfare that she so remain in the custody of her mother, Mary C. Cole;

"It is hereby ordered, adjudged and decreed that the custody of said Dorothy Cole, a minor, be and it is hereby awarded to her mother, the said Mary C. Cole;

"It is further ordered that Charles P. Cole, the father of said minor, and petitioner herein, shall have the right upon each Saturday and Sunday of each week to see said Dorothy Cole, a minor, in the city of Oakland, at any hotel or other place where he may be stopping, or at the home of any friend of the said Charles P. Cole, or at any place except in the apartments of the said Mary C. Cole; . . . *that said Charles P. Cole shall have the right to have the said Dorothy Cole come to the city of Stockton to visit him upon all school vacations during the continuance of this order, and the said Mary C. Cole shall prepare and send the said Dorothy Cole to the city of Stockton upon such occasions, if desired by petitioner, or deliver her to said Charles P. Cole to be so brought to the city of Stockton.*"

The proceedings were instituted in contemplation and under the authority, no doubt, of section 1747 of the Code of Civil Procedure, providing "when and on what petition" the superior court of each county may appoint "guardians for the persons and estates, or either of them, of minors." The court having declined to appoint a guardian it is claimed that its authority was exhausted and that said section affords no warrant for the order that was made as to the custody of said minor and the privilege of visiting her by her father and of having her temporarily sojourn with him. If that section were the only statutory provision upon the subject the soundness of petitioner's claim would probably have to be conceded, but section 214 of the Civil Code provides that "When a husband and wife live in a state of separation, without being divorced, any court of competent jurisdiction, upon application of either, if an inhabitant of this state, may inquire into the custody of any unmarried minor child of the marriage, and may award the custody of such minor child to either, for such time and under such regulations as the case may require." There can be no doubt, we think, that the said order made by the court was clearly authorized by said section.

It is equally clear that it was and is a court of "competent jurisdiction" to make such order. There is no more doubt that the pleadings before the court set forth all the facts that are

contemplated by said section. The prayer of the husband's petition, it is true, was for the appointment of him as the guardian of said minor, but that would not preclude any legal disposition of the case within the purview of the evidence and of the pleadings. Indeed, said Mary C. Cole sought such an order as was made, her answer concluding with this prayer: "Wherefore, the said Mary C. Cole prays that the petition of Charles P. Cole for appointment of himself as guardian of the person and estate of said minor child be denied and that the custody of said minor child be awarded to said Mary C. Cole under the provisions of section 214 of the Civil Code for such time and under such regulations as the case to this court may seem proper, and fixing the time and place when and where said Charles P. Cole may see and visit said minor child."

It may be said, also, that said petition and answer constituted an "application," as that term is used in said section 214. Said section does not require that either party "bring an action" in the technical sense of the term "action" and we can see no reason why a formal petition setting forth the appropriate facts may not be regarded as a sufficient basis for a judicial investigation of the situation of the minor and the disposition of its custody in accordance with its welfare. The proceedings here, indeed, comprehended substantially everything that would be included in a formal suit. The petition with suitable averments was filed, a citation was issued and served upon the wife who appeared and answered and a trial was had upon the issues thus presented. No additional aid could have been afforded to the parties or to the court if the proceeding had been taken strictly in conformity with the section 199 of the Civil Code, providing "When husband or wife may bring action for the exclusive control of children," etc. It is to be observed, though, that said section 214 is a special provision applicable when the husband and wife "live in a state of separation" and when the purpose of the proceeding contemplates the "custody of minor children" and the prerequisite is that an *application* shall be made by one of the spouses.

Likewise, we see no merit in the claim that the court lacked jurisdiction to make said order by reason of the residence of the minor in Alameda County. It is true that she was sojourning with her mother in the County of Alameda, but her father was a resident of San Joaquin County and

therefore the latter is deemed in law to be her residence. (Pol. Code, sec. 52, subd. 4.)

"Where the husband and wife are living in a state of separation, the county of the husband's residence is the county of the residence of the minor children, unless he has consented to their acquiring residence elsewhere, or has voluntarily relinquished his parental authority over them or has been otherwise legally deprived thereof." (*Hunt* v. *Hunt,* 94 Ga. 257, [21 S. E. 515].)

Moreover, in said section 214 of the Civil Code, there is no such provision as to the residence of the minor as is found in said section 1747 of the Code of Civil Procedure.

We discover no ground whatever for holding that the lower court was without jurisdiction to make said order. It had authority, therefore, to enforce its execution and to punish willful disobedience thereof as a contempt of court. (Code Civ. Proc., sec. 1209.)

Such willful disobedience on the part of said Mary C. Cole was claimed and set up by said Charles P. Cole in a petition filed in said court on April 5, 1915, and, after citation was issued and an answer filed by the wife, a hearing was had and the court found and adjudged the said Mary C. Cole to be "guilty of contempt of court in having disobeyed that lawful order of the court hereinbefore referred to dated March 8, 1915." The particular ground supporting the court's conclusion is set forth in the findings as follows:

"And it further appearing that on or about the 27th day of March, 1915, there was a school vacation of the public schools of the city of Oakland beginning on said 27th day of March, 1915, and continuing thereafter consecutively for a period of two weeks; and that the said Charles P. Cole desired the presence and company of the said Dorothy Cole with him in the city of Stockton during said school vacation; and that several days previous thereto, to wit: on the 23d day of March, 1915, he wrote to the said Mary C. Cole by registered letter requesting her to send the said Dorothy Cole to the city of Stockton by a certain train leaving the city of Oakland about the hour of two o'clock P. M. on the 26th day of March, 1915; and that he would meet the said train and the said Dorothy Cole at the city of Stockton upon its arriving, about the hour of 5:15 P. M.;

"That the said Mary C. Cole received the said letter on the 24th day of March 1915; that thereafter and on or about the 25th day of March 1915 the said Charles P. Cole telephoned to the said Mary C. Cole in the city of Oakland and conversed with her over the telephone and again requested that said Dorothy Cole be sent to him on the said 26th day of March, 1915, at the city of Stockton and that thereafter, and on or about the 26th day of March, 1915, he telegraphed to the said Mary C. Cole, in the city of Oakland, again requesting the sending of the said Dorothy Cole to him at the city of Stockton; that said telegram was received by the said Mary C. Cole and that notwithstanding such requests of the said Charles P. Cole, made in accordance with the order of the court hereinbefore mentioned and in defiance and disobedience of the said order of court, the said Mary C. Cole refused and failed, and has ever since the said 26th day of March, 1915, continued to refuse and has failed to send and deliver said Dorothy Cole to the said Charles P. Cole in the city of Stockton."

There is, indisputably, evidence in the record to support said findings of fact.   Charles P. Cole testified "that he wrote a letter to Mary C. Cole on the 22d day of March, 1915, and with said letter sent her a check for $25; that he wrote on said check the following words: 'Dorothy support'; that in that letter he told her that he wanted Dorothy during the vacation and asked her to let him know when she could be sent to him; that he had been sending to Mary C. Cole $25 per month for Dorothy's support for several months past, and that the check sent on the 22d day of March was for the month of March, 1915; that he phoned to Mary C. Cole on the 25th day of March to send Dorothy to Stockton; that Mrs. Cole said she would not, that he had not sent the fare; that he told her to take the fare out of her support money, which she refused to do; that, on the 26th day of March, 1915, he telegraphed Mrs. Cole to send Dorothy on the two o'clock Santa Fe train to Stockton; that he did not send any fare or direct any other way for her to be sent." Mrs. Cole's testimony does not conflict with the foregoing, but she claims that the court was not warranted in finding any willful disobedience on her part, but, on the contrary, that she was justified in failing to comply with her husband's request.   This contention is grounded upon the position that the child's

fare was not furnished by the husband. The order was, however, silent as to that. She was directed to send the child to Stockton, and, assuming that such order was within the legitimate exercise of the authority of the court, it follows that it was her duty to obey it if she could. The order necessarily implied the use of whatever effort and expense was required for the purpose. To uphold her contention we must read into the order the proviso that the husband should forward her the railroad fare. This would be adding a condition not contained in the order itself. Of course, if it had appeared that she was unable to comply with said order by reason of her lack of funds or otherwise, she could not justly have been found guilty of willful disobedience. But no such condition is presented. Indeed, the husband directed her to use for the child's fare a portion of the money that he had sent her a few days before. He undoubtedly had the right so to direct the disposition of his voluntary remittance.

The defense of good faith based upon the advice of counsel was presented by petitioner, but it cannot be said that the court was bound to accord to it full credit. The order was sufficiently certain to be understood; it was disregarded by petitioner; it was competent under the evidence for the court to determine that the disobedience was willful, and, while a decision in favor of petitioner would have been supported, we do not see how it can be held that the superior court exceeded its jurisdiction in making the order complained of. The writ is therefore denied.

Chipman, P. J., and Hart, J., concurred.